IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

THOMAS E. PEREZ,

       Plaintiff,                                ORDER FOR JUDGMENT

       v.                                    14-cv-95-wmc

DAVID STRATTON, IDS SALES AND
ENGINEERING, INC. and the IDS SALES
AND ENGINEERING RETIREMENT SAVINGS PLAN,

       Defendants.
_____

       A hearing on default judgment was held on July 8, 2015, in the above-captioned matter. Plaintiff appeared by attorney Stacey Lynn Scanlon; individual defendant David Stratton appeared by attorney Reed Peterson. For the reasons discussed below, the court will enter default judgment against Stratton in the amount of $19,114.94 and will also enter a permanent injunction preventing Stratton from serving as an ERISA fiduciary.

BACKGROUND

       On February 12, 2014, plaintiff Thomas E. Perez, the Secretary of Labor, filed this civil suit under 29 U.S.C. §§ 1132(a)(2) and (5), alleging that defendants David Stratton and corporate defendant IDS Sales and Engineering, Inc. ("IDS") failed to remit employee salary deferral contributions to the IDS Sales & Engineering, Inc. Retirement Savings Plan ("the Plan"), an employee benefit plan governed by ERISA. (Compl. (dkt. #1) ¶¶ 11-18.) On February 14, plaintiff requested that defendants waive service, which they did on March 31. (Dkt. ##5-7.) Stratton initially filed an answer (dkt. #8), but

1

on April 21, 2015, he filed an unopposed motion to withdraw that answer, which the court granted on April 23, 2015.  (Dkt. #30.)

On May 12, 2015, plaintiff moved for an entry of default against Stratton.  The next day, the clerk of court granted that motion.  (Dkt. #34.)  Plaintiff thereafter filed the pending motion for default judgment against Stratton (dkt. #36), seeking monetary damages and injunctive relief.[1]  Because the clerk of court has entered default against Stratton and IDS, the court accepts as true all factual allegations in the complaint, except those relating to damages.  *In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004).

According to the complaint, Stratton was the President and sole owner of IDS and exercised authority and control over IDS as well as the Plan and its assets.  (Compl. (dkt. #1) ¶ 9.)  He was a named trustee of the Plan and a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).  (*Id.*)

Between 2003 and February 28, 2011, the Plan's governing documents provided that participants could make pre-tax contributions to the Plan as salary deferrals from their compensation on an annual basis and permitted participants to take loans from their Plan accounts.  (*Id.* at ¶ 11.)  Stratton had authority over Plan management and the disposition of Plan assets during that time.  (*Id.* at ¶ 12.)  Between December 1, 2010, and February 28, 2011, under Stratton's direction, IDS withheld $14,435.61 in employee contributions from its employees' paychecks for remittance to the Plan;

---

[1] ERISA authorizes both injunctive relief that "enjoin[s] any act or practice which violates any provision of this subchapter" and other appropriate equitable relief.  29 U.S.C. § 1132(a)(5).  For breaches of fiduciary duty, ERISA imposes liability to "make good to such plan any losses to the plan resulting from each such breach" and allows for the removal of a fiduciary.  29 U.S.C. § 1109.

2

retained this money in its corporate bank account; and never remitted it to the Plan. (*Id.* at ¶¶ 15-16.)  Ultimately, Stratton caused IDS to keep those contributions in its corporate bank account and used them to pay IDS's general operating expenses. (*Id.* at ¶ 16.)  IDS and Stratton also withheld an additional $31,523.42 in employee contributions and $167.40 in participant loan repayments that were not remitted to the Plan in a timely manner but were instead held in IDS's corporate bank account up to 71 days after they should have been remitted. (*Id.* at ¶¶ 20-21.)

Based on these factual allegations, which the court accepts as true except as to the amount owing, plaintiff has established that Stratton is liable for:  failing to hold all assets of the Plan in trust; permitting the assets of the Plan to inure to his own benefit; failing to hold them for the exclusive purposes of providing benefits to plan participants and their beneficiaries; causing the Plan to engage in transactions which he knew constituted a direct or indirect transfer to, or use by, or for the benefit of a party in interest of assets to the Plan; failing to act solely in the interest of Plan participants and their beneficiaries; dealing with assets of the Plan in his own interest; and acting on behalf of a party whose interests are adverse to the interests of the Plan or its participants and beneficiaries.  Accordingly, the court must determine whether plaintiff has demonstrated entitlement to the relief sought by virtue of the default.

OPINION

## I.    Monetary Relief

Plaintiff seeks monetary relief in the amount of $19,114.94, to be remitted to the Plan participants affected by Stratton's violations within fourteen days of the entry of

judgment.    This represents $14,435.61 in withheld employee salary contributions; $4,236.25 in "lost opportunity costs for unremitted contributions"; and $443.08 in "lost opportunity costs for untimely remitted contributions."

The $14,435.61 figure comes from an investigation performed by Investigator Michael Baron and described in the declaration of his supervisor, Crystal Coleman, the former Deputy Regional Director of the Chicago Office of the Employee Benefits Security Administration.   (Dkt. #36-2.)    Under Coleman's supervision, Investigator Baron examined payroll documents from IDS, as well as payroll journals from provider Automatic Data Processing, Inc.; contribution records of John Hancock Life Insurance Company, the Plan's asset custodian; and records from Kelly Financial, Inc., the Plan's third-party administrator.   (*Id.* at ¶ 4.)   Investigator Baron ultimately found that from December 1, 2010, until February 28, 2011, IDS withheld $14,435.61 from employee salaries and retained those monies in its corporate bank account.   (*Id.* at ¶ 6.)    The breakout of unremitted contributions by employee adds up to this sum.   (*See* Mot. Ex. A (dkt. #36-1) 3.)    The court is, therefore, satisfied that plaintiff has proven up the $14,435.61 in requested relief.

The lost opportunity costs appear to reflect calculation of lost interest on both the unremitted and untimely remitted participant contributions.   In support of those figures, plaintiff submits the declaration of Ashley Romanacce, a Supervisory Investigator employed by the Chicago Office of the Employee Benefits Security Administration. (Dkt. #36-1.)    Romanacce assigned Investigator Samuel Williams to compute lost opportunity costs on the untimely remitted contributions and the contributions that were never remitted.    Investigator Baron concluded through his investigation that

4

$31,523.42 in contributions and $167.40 in employee loan repayments were untimely remitted. (Coleman Decl. (dkt. #36-2) ¶ 5.)   Using those figures and the Internal Revenue Code § 6621 interest rates, Investigator Williams concluded that a total of $4,679.33 in lost opportunity costs was owed to the Plan -- $443.08 on the untimely remitted funds and $4,236.25 for the unremitted funds. (Romanacce Decl. (dkt. #36-1) ¶2 & Ex. A.)  This total sum is, therefore, also deemed proven.

Finally, plaintiff asked that the court order Stratton to repay this entire sum within fourteen days of the entry of the default judgment.  Stratton's counsel objected on the grounds that it was not realistic for Stratton, who recently emerged from bankruptcy, to make the full payment in such a short span of time.   In light of Stratton's circumstances, the court agrees that imposition of a specific deadline to pay the entire judgment (and the concomitant risk of contempt that deadline represents) is not warranted.  Instead, the court strongly suggests that the parties attempt to agree upon a realistic repayment schedule consistent with Stratton's ability to pay.   Failing that, plaintiff is, of course, free to take Stratton's supplemental deposition and undertake to execute on the judgment as appropriate.

## II.     Injunctive Relief

Plaintiff also requests injunctive relief that: (1) permanently enjoins Stratton from violating Title I of ERISA; (2) orders Stratton to correct the prohibited transactions in which he engaged; and (3) permanently enjoins Stratton from serving as a fiduciary or service provider to any ERISA-covered employee benefit plan except to the extent necessary to implement this judgment.  To be entitled to injunctive relief, a plaintiff must

demonstrate: (1) irreparable injury; (2) inadequate remedies at law; (3) the balance of hardships favors injunctive relief; and (4) the public interest would not be disserved. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  It is "not uncommon for courts to issue injunctions as part of default judgments."  *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 965 (N.D. Ind. 2006) (citing *Johnson v. Kakvand*, 192 F.3d 656 (7th Cir. 1999)); *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003).

Appropriate relief for a breach of fiduciary duty "may include a permanent injunction barring a former ERISA fiduciary from providing services or acting as a fiduciary to any employee benefit plan in the future."  *Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006); *Chesemore v. Alliance Holdings, Inc.*, 948 F. Supp. 2d 928, 948-49 (W.D. Wis. 2013).   For reasons already set forth above, the court finds injunctive relief appropriate in this case and will enter the injunction barring Stratton from serving as a fiduciary to an ERISA-covered employee benefit plan, except to the extent necessary to carry out this judgment.

As for plaintiff's additional request that Stratton be permanently enjoined from "violating Title I of ERISA," similar to the default judgment against IDS (dkt. #31), the court rejects that request as overbroad.  "Injunctions that 'merely instruct the enjoined party not to violate a statute' generally are overbroad, increasing 'the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful.'"  *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) (quoting *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1315 (Fed. Cir. 2004)); *see also Solis v. Seher*, No. 3:12-CV-415 JD, 2013 WL 393291, at *3-4 (N.D. Ind. Jan. 31, 2013)

6

(declining to permanently enjoin defendant from violating provisions of Title I of ERISA).

Having determined that plaintiff is entitled to most of the relief requested, the court will enter a corresponding judgment in this matter that includes the monetary relief and the above-described, limited injunctive relief. The court will also order that a copy of the judgment and this opinion and order be served on Stratton by the U.S. Marshals, unless his counsel is authorized to accept service of the injunction on Stratton's behalf.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for default judgment (dkt. #36) is GRANTED. The clerk of court is directed to enter default judgment in favor of plaintiff Thomas E. Perez and against defendants David Stratton and IDS Sales and Engineering, Inc. Retirement Savings Plan, as follows:

   a. an award of monetary damages in the amount of $19,114.94; and

   b. entry of a permanent injunction requiring Stratton to correct the prohibited transactions in which he engaged and barring Stratton from serving as a fiduciary to an ERISA-covered employee benefit plan except to the extent necessary to carry out this judgment.

2. Should counsel for Stratton fail to provide written confirmation *within ten (10) days* of his acceptance of entry of judgment on his client's behalf, the United States Marshals Service is hereby ordered to serve a copy of this order and the judgment on defendant Stratton personally.

3. The clerk of court is directed to close this case.

Entered this 13th day of July, 2015.

BY THE COURT:
/s/

_____

William M. Conley
District Judge

7